UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDY MATUTE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-595** |
| **BP EXPLORATION AND PRODUCTION, INC. et al** | **SECTION: "G"(1)** |

### ORDER AND REASONS

Before the Court is Plaintiff Fredy Matute's ("Plaintiff") "Opposed Motion to Continue."[1] In the motion, Plaintiff requests that the Court continue all pretrial and trial deadlines because of COVID-19 delays.[2] Defendants BP Exploration & Production Incorporated and BP American Production Company (collectively, "BP") oppose the motion.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion.

### I. Background

This case arises out of the Deepwater Horizon oil spill that occurred on April 20, 2010.[4] On January 11, 2013, United States District Judge Carl J. Barbier, who presided over the multidistrict litigation arising out of the Deepwater Horizon incident, approved the Deepwater

---

[1] Rec. Doc. 21.

[2] *Id.*

[3] Rec. Doc. 22.

[4] Rec. Doc. 1.

1

Horizon Medical Benefits Class Action Settlement Agreement ("MSA").[5] The MSA includes a Back-End Litigation Option ("BELO") that allows certain class members, including clean-up workers who follow certain procedures set forth in the MSA, to sue BP for later-manifested physical conditions.[6]

On January 25, 2019, Plaintiff filed a BELO Complaint in this Court.[7] In the Complaint, Plaintiff alleges that the Deepwater Horizon oil spill exposed him to "oil, dispersants, and other harmful chemicals" while he performed duties as a "Clean-up Worker."[8] That exposure allegedly caused Plaintiff to suffer permanent injuries, including chronic conjunctivitis, chronic pharyngitis, and chronic rhinosinusitis.[9]

On August 22, 2019, this case was transferred from Judge Barbier (Section "J" of this Court) to Chief Judge Nannette Jolivette Brown (Section "G" of this Court).[10] On September 25, 2019, the Court issued a scheduling order setting this case for trial on November 16, 2020.[11] On May 20, 2020, Plaintiff filed the instant motion requesting a new scheduling order continuing all pretrial and trial deadlines.[12] On June 8, 2020, BP filed an opposition to the instant motion.[13]

---

[5] *See Brown v. BP Expl. & Prod. Inc.*, 2019 WL 2995869, at *1 (E.D. La. July 9, 2019).

[6] *Id.*

[7] Rec. Doc. 1.

[8] *Id.* at 5–6.

[9] *Id.* at 6.

[10] Rec. Doc. 7.

[11] Rec. Doc. 14.

[12] Rec. Doc. 21.

[13] Rec. Doc. 22.

## II. Parties' Arguments

### A. *Plaintiff's Arguments in Support of the Motion*

Plaintiff requests that the Court issue a new scheduling order—continuing all pretrial and trial deadlines—for the following reasons.[14] First, Plaintiff states that his counsel's law firm required employees to follow countermeasures to prohibit the spread of COVID-19.[15] These countermeasures allegedly have caused an "unprecedented upheaval" in his counsel's workplace.[16] Second, Plaintiff states that his expert toxicologist has a familial issue involving COVID-19, which has delayed her expert report for this case.[17] Plaintiff offers to provide more information regarding the familial issue in a confidential setting.[18] Third, Plaintiff states that the delay in preparing this case is not his fault.[19] Plaintiff contends that he "demonstrated due diligence in prosecuting this case," but the COVID-19 pandemic caused unprecedented challenges.[20] Finally, Plaintiff states that BP will not suffer undue prejudice if the Court issues a new scheduling order continuing pretrial and trial deadlines.[21]

### B. *BP's Arguments in Opposition to the Motion*

BP contends that they are sympathetic to the challenges imposed by the COVID-19

---

[14] Rec. Doc. 21-1.

[15] *Id.* at 3.

[16] *Id.*

[17] *Id.* at 2 n.1.

[18] *Id.*

[19] *Id.* at 3.

[20] *See id.*

[21] *Id.* at 4.

pandemic.[22] Yet BP states that requests for continuances should be evaluated on a case-by-case basis.[23] For the following reasons, BP argues that Plaintiff fails to show the required "good cause" for a continuance.[24]

First, BP states that Plaintiff's motion mainly "rests on the generic proposition that deadlines should be extended because [COVID-19] is a public health concern."[25] BP states that the "government's easing of Covid-related restrictions foretells an improvement in conditions, not a worsening."[26] Second, BP states that the Plaintiff's expert need not conduct field work in this case.[27] BP contends that Plaintiff's expert may complete her expert report through telephone calls and emails.[28] Third, BP suggests that Plaintiff's honest reason for needing a continuance is that Plaintiff's counsel and his expert are overwhelmed by the number of BP cases they are litigating in federal court.[29] BP points out that Plaintiff's expert toxicologist produced three lengthy expert reports in May and June of 2020.[30] For these reasons, BP concludes that Plaintiff's request for a continuance should be denied.[31]

---

[22] Rec. Doc. 22 at 1.

[23] *Id.*

[24] *Id.* at 3.

[25] *Id*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at 4.

[30] *Id.* at 4–5.

[31] *Id.* at 5.

### III. Legal Standard

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."[32] To demonstrate good cause, the party seeking to modify the scheduling order has the burden of showing "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."[33] The Fifth Circuit has enumerated "four relevant factors to consider when determining whether there is good cause under Rule 16(b)(4)."[34] Those four factors include "(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice."[35]

"When the question for the trial court is a scheduling decision, such as whether a continuance should be granted, the judgment range is exceedingly wide, for, in handling its calendar and determining when matters should be considered, the district court must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's [time]."[36] Simply put, whether to grant or deny a continuance is within the sound discretion of

---

[32] Fed. R. Civ. P. 16(b)(4).

[33] *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir.2013) (per curiam) (internal quotation marks and citation omitted).

[34] *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015).

[35] *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010) (internal quotation marks and citation omitted).

[36] *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549 (5th Cir. 2000) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1193 (5th Cir. 1986)). The Fifth Circuit does not "substitute [its] judgment concerning the necessity of a continuance for that of the district court" unless "the complaining party demonstrates that it was prejudiced by the denial." *Id.* (quoting *Fontenot*, 780 F.2d at 1194).

the trial court.[37]

### IV. Analysis

The Court will now consider each good-cause factor in turn. First, Plaintiff sufficiently explains why he cannot meet the deadlines in the current scheduling order. Plaintiff states that the COVID-19 pandemic—and the required countermeasures—caused an "unprecedented upheaval" in his counsel's workplace.[38] Plaintiff also states that the COVID-19 pandemic adversely affected his expert toxicologist, Dr. Patricia Williams.[39] Plaintiff represents that Dr. Williams has experienced a familial issue related to COVID-19, which has delayed her expert report for this case.[40]

Second, the importance of the continuance is apparent. BP concedes that several district courts have granted BP's motions for summary judgment in similar BELO cases when the plaintiff failed to timely provide an expert toxicologist's report.[41] If the Court does not grant Plaintiff's request for a continuance, his case will be severely prejudiced.[42]

Third, despite BP opposing Plaintiff's continuance request during the COVID-19 pandemic, BP fails to explain a single prejudicial effect that a continuance would affect upon

---

[37] *United States v. Alix*, 86 F.3d 429, 434 (5th Cir. 1996).

[38] Rec. Doc. 21-1 at 3.

[39] *Id.* at 2.

[40] *Id.* at 2 & n.1. BP incorrectly states that Plaintiff's argument "rests on the generic proposition that deadlines should be extended because [COVID-19] is a public health concern." Rec. 22 at 3. Plaintiff explains how the COVID-19 pandemic affected both his counsel and expert in preparing the instant case. Rec. Doc. 21; Rec. Doc. 21-1.

[41] Rec. Doc. 22 at 4 n.6.

[42] Plaintiff states that the instant toxic-tort case requires "extensive scientific preparation." Rec. Doc. 21-1 at 3. Plaintiff also states that the COVID-19 pandemic has delayed Dr. Williams' necessary expert report. *Id.* at 2.

6

them.[43] Lastly, a continuance of all deadlines will be granted to cure any potential prejudice caused by the delay in Plaintiff's ability to produce his expert report. Considering these factors and each party's arguments, Plaintiff has demonstrated the required good cause under Federal Rule of Civil Procedure 16(b)(4).[44]

### V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Fredy Matute's "Opposed Motion to Continue"[45] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties must contact the Court's case manager by July 6, 2020 to conduct a scheduling conference to set a new trial date and new pretrial deadlines.

**NEW ORLEANS, LOUISIANA,** this __23rd__ day of June, 2020.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[43] Rec. Doc. 22.

[44] The Court considered BP's argument that Plaintiff truly needs the continuance because his counsel and his expert are overwhelmed by the number of BELO cases that they are litigating in federal court. In support, BP points out that Dr. Williams produced three lengthy expert reports in May and June of 2020.

BP's argument is unpersuasive. The mere fact that Dr. Williams completed three expert reports does not suggest that she was not hindered by COVID-19. Dr. Williams may have been able to complete many more expert reports—in addition to the three reports mentioned by BP—if not for the COVID-19 pandemic.

[45] Rec. Doc. 21.